UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CANDICE IVORY,

                             Plaintiff,

         v.                                                 5:13-cv-58

SYRACUSE UNIVERSITY, et al.,

                             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff Candice Ivory commenced the instant action pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., claiming that she was retaliated against and terminated on account of her race and engaging in protected activity, and that she was subjected to a hostile work environment on account of her race. Presently before the Court is Defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Plaintiff filed untimely papers in opposition to the motion.

## I. FACTS

The Complaint alleges that Plaintiff began working as the Events Coordinator at the Syracuse University Humanities Center on October 16, 2011. Her supervisor was Defendant Gregg Lambert. The two other people in her department were Kelly Pickard and Karen Ortega. During the first week of Plaintiff's employment, Pickard began "harassing [Plaintiff] about [her] work schedule. Pickard made statements that suggested that [Plaintiff] was slow

and lazy and made several references to her previous experience as an employee in the African American Studies Department." Compl. at ¶ 4. On October 19, 2011, Plaintiff reported harassment to the Human Resources Department. Plaintiff also discussed the matter with Lambert. Notwithstanding these reports, "Pickard continued to harass [Plaintiff] about [her] work and [her] work schedule. She continued to make remarks relating to the stereotype that African Americans are slow and lazy. She also made several references about the fact that I was married to a white male." Compl. at ¶ 7.

Between October and December, Plaintiff had several meetings with Lambert to resolve the conflicts in the office. Lambert responded by suggesting that the people in the office needed to get to know one another.

In November 2011, Ortega accused Plaintiff of errors that were Ortega's responsibility. Ortega accused Plaintiff "of thwarting her work." Compl. at ¶ 9. As a result, on December 1, 2011, Lambert issued a warning to Plaintiff.

On December 6, 2011, Ortega cornered Plaintiff in her office and asked "why [Plaintiff's] husband would not speak to her," and "what is your problem," and claimed that Plaintiff did not give her any respect. Compl. at ¶ 11. Later that day, Lambert called Plaintiff into his office and told her that "you don't talk, you listen." Compl. at ¶ 12. Lambert then "blamed [Plaintiff] for the lack of completed tasks in the office. . . ." Id.

On December 9, 2011, Plaintiff sent a charge of discrimination to the New York State Division of Human Rights. On December 10, 2011, "Ortega moved into [Plaintiff's] duties as coordinator and then told [Plaintiff] how [they] would proceed for the remainder of the year." Compl. at ¶ 14.

On December 14, 2011, Ortega, Pickard and Plaintiff were ordered to go to lunch at the faculty lounge. Thereafter, Plaintiff met with "Lambert and Pat Tassini [from Human Resources] who both told [Plaintiff] that [she] had misunderstood [her] work hours expectation, and that [her] own pompous attitude had caused the creation of a hostile work environment." Compl. at ¶ 16.

On December 16, 2011, Lambert rescinded Plaintiff's previously approved Christmas holiday purportedly because of a lack of completed work. Shortly thereafter, Plaintiff began to experience chest pains. Plaintiff was taken to the emergency room. On December 20, 2011, Plaintiff began a leave of absence from work due to excessive stress and anxiety.

On September 10, 2012, Plaintiff was notified that the Humanities Center was restructuring its office and that both she and Ortega's positions would be eliminated. Plaintiff was advised that she could apply for the new job that was being posted. On October 15, 2012, Plaintiff was interviewed for the newly created Administrative Assistant II position. Pickard was on the panel of interviewers. Plaintiff was not offered the new position. On November 11, 2012, Plaintiff's position and disability benefits were terminated.

After receiving Right to Sue notices, Plaintiff commenced the instant action claiming that she was the victim of a hostile work environment on account of her race; she was retaliated against for her complaints about Pickard and Ortega by receiving a warning and being denied pre-approved vacation time; she was retaliated against for filing a charge of discrimination by being terminated and not being rehired; and that her contract of employment with Defendant was terminated on account of her race.

## II.     DISCUSSION

### a.     Individual Liability Under Title VII

The individual Defendants move to dismiss the Title VII claims against them on the ground that there is no individual liability under Title VII. Indeed, Title VII does not provide for individual liability and, accordingly, the Title VII claims are dismissed as to the individual Defendants. The Title VII claims remain as to Syracuse University.

### b.     Res Judicata/Collateral Estoppel

Defendants next seek dismissal of the claims brought under 42 U.S.C. § 1981 on the ground that they are barred by res judicata or collateral esoppel. The basis for this argument is that Plaintiff made identical allegations in her complaints of discrimination filed with the New York State Division of Human Rights (the "Division") and Plaintiff had a full and fair opportunity to adjudicate those claims before the Division. Plaintiff responds that "[t]he most important part" of her claim "is that her position at Syracuse University was terminated in retaliation for her attempts to address the discriminatory, hostile work environment and numerous adverse actions by the Defendants. The termination took place in November 2012, well after the Division concluded the initial investigation."

The doctrines of res judicata and collateral estoppel "'are related but distinct doctrines that may bar a party from litigating certain claims or issues in a subsequent proceeding.'" Macfarlane v. Vill. of Scotia, N.Y., 86 F. Supp.2d 60, 64 (N.D.N.Y. 2000) (quoting Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999)). Res judicata "is a final judgment on the merits of an action that precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Macfarlane, 86 F. Supp.2d at 64.

Under collateral estoppel, "'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated by the same parties in a future lawsuit.'" Macfarlane, 86 F. Supp.2d at 64 (quoting Schiro v. Farley, 510 U.S. 222, 223 (1994)). Collateral estoppel applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits. Macfarlane, 86 F. Supp. 2d at 64.

"When a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tenn. v. Elliott, 106 S. Ct. 3220, 3227 (1986) (internal quotations and citations omitted).

> Under New York law, the quasi-judicial determinations of administrative agencies will be awarded preclusive effect "when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law." Ryan v. New York Tel. Co., 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823, 825-26, 467 N.E.2d 487 (1984). The burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in the prior action or proceeding. DeCintio v. Westchester Co. Med. Ctr., 821 F.2d 111, 117 (2d Cir.1987) (citing Ryan, 62 N.Y.2d at 499-501, 467 N.E.2d at 489-91, 478 N.Y.S.2d at 825-27).

Evans v. New York Botanical Garden, 02 CIV. 3591 RWS, 2002 WL 31002814 (S.D.N.Y. Sept. 4, 2002).

To the extent that Plaintiff claims that she was discriminated against, or subject to a hostile work environment, in violation of 42 U.S.C. § 1981, or that she was retaliated against

- 5 -

in violation of § 1981 with respect to the issuance of a letter of reprimand and/or the retracting of a pre-approved vacation day, those claims are barred by collateral estoppel. Upon reviewing the charge of discrimination filed with the Division, the submissions to the Division by Plaintiff's then attorney;[1] the history of events before the Division (which include a conference held by the Division at which Plaintiff was invited to bring an attorney and "all other witnesses, books, records, papers, and documents pertaining to this matter;" and a witness interview); the recitation of facts by the Division; and the Division's determination of no probable cause, the Court finds that there is an identity of issues, those issues were fully determined against Plaintiff, and Plaintiff had a full and fair opportunity to be heard on those issues. See Evans, 2002 WL 31002814, at *5-6. The Division expressly found that:

> Complainant was given expectations of job duties by a supervisor that she alleged were counter to her understanding of the position in relation to scheduling and time off requests. . . . Investigation showed that Complainant was absent from the office within the first few months of her employment, which Respondent deemed to be an area of concern. Thus, Respondent made the decision to limit Complainant's time off requests and to request that she adhere to a standard work schedule, which is a legitimate and reasonable business request. Investigation did not reveal any nexus between these directives and Complainant's race/color or age.

Accordingly, those claims may not be relitigated here under § 1981.

Plaintiff also claims that she was retaliated against "for filing a charge of discrimination by eliminating my position and failing to rehire me following my interview." Compl. at ¶ 8. The Court finds that neither res judicata nor collateral estoppel preclude this claim. While principles of collateral estoppel may preclude Plaintiff from relying on the conduct already considered by the Division to support a claim of an unlawful termination or an unlawful failure to hire, looking at the Complaint in the light most favorable to Plaintiff,

---

[1] Plaintiff was represented by counsel before the Division.

there may be additional conduct that transpired after the Division's determination in May 2012 that was not considered by the Division and may support a claim of unlawful termination and/or retaliation.

That being said, the only alleged involvement by the individual Defendants in this latter conduct is that Defendant Pickard was one of the interviewers for the newly created position. Because there is no allegation that any of the individual Defendants were personally involved in the decision to eliminate Plaintiff's position (or that of Defendant Ortega), there is no basis upon which to impose legal liability on those Defendants for any alleged wrongful termination. Accordingly, the unlawful termination claim must be dismissed as to the individual Defendants.

The Complaint alleges that Pickard was personally involved in the decision not to rehire Plaintiff in that she was on the interviewing committee. Although Plaintiff does not specifically ascribe any specific unlawful conduct to Pickard's involvement on the committee, it may fairly be inferred that Plaintiff is claiming that Pickard attempted to interject her alleged retaliatory motives into the hiring process. Accordingly, the claim under § 1981 claiming that Pickard failed to rehire Plaintiff because of her prior complaints of discrimination is not subject to dismissal at this time.

## III. CONCLUSION

For the foregoing reasons, the individual Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion is granted insofar as Plaintiff's claims are dismissed in their entirety as to Defendants Lambert and Ortega. All claims are dismissed as to Defendant Pickard except with respect to the alleged failure to rehire. All claims remain as to Defendant Syracuse University.

IT IS SO ORDERED.

Dated: September 24, 2013

_____
Thomas J. McAvoy
Senior, U.S. District Judge